UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANNETTE L. VAN PAY,

        Plaintiff,

       v.                                      Case No. 21-C-129

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Annette L. Van Pay filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Van Pay asserts that the decision of the administrative law judge (ALJ) is flawed and requires reversal for a number of reasons. For the reasons that follow, the Commissioner's decision will be affirmed.

## BACKGROUND

Van Pay filed an application for a period of disability and disability insurance benefits on April 29, 2019, alleging disability beginning on July 16, 2016. R. 13. She initially alleged disability stemming from fibromyalgia, depression, and anxiety. R. 13, 146, 170. Her claims were denied initially and upon reconsideration, and Van Pay thereafter requested a hearing before an ALJ. R. 13. On July 13, 2020, ALJ Patrick Berigan held a hearing at which Van Pay, who was represented by counsel, and a vocational expert (VE) testified. R. 33–74.

At the time of the hearing, Van Pay was 53 years old and lived in Denmark, Wisconsin. R. 37, 45. Van Pay testified that she was married but separated from her spouse, graduated from

high school, attended some college courses, and graduated from beauty school. R. 45–46. For three years, ending in 2016, she worked for KRR Enterprise, operating the 141 Speedway racetrack as its manager. R. 47–48. Van Pay stated that she did this job until she suffered from a nervous breakdown after undergoing a complete hysterectomy. R. 48. She also worked as a kitchen manager for a catering company and ran a deli area inside the Ledgeview Shell. R. 49–50. Each of these jobs required her to be on her feet for a considerable amount of time and also required a significant amount of lifting. R. 48–51.

When asked what prevented her from working, Van Pay responded that she was "mentally not feeling good" and was experiencing various physical symptoms, such as numbness in her arms, weakness in her legs, and headaches. R. 52–53. Van Pay noted that the pain she experienced was "excruciating." R. 53. She also stated that her right leg would consistently give out on her, and that in the last week or two prior to the hearing, it had happened roughly five times, causing her to fall each time. R. 54–55. Van Pay testified that she could never "get comfortable," indicating that she had trouble walking, sitting, and laying down. R. 55. She testified that, if she was lucky, she would get roughly three to four hours of sleep per night. R. 52. With respect to her mental state, Van Pay stated that she was suffering from "terrible" mental health issues, such that she was to the point of feeling suicidal. R. 53–54.

In a sixteen-page decision dated July 27, 2020, the ALJ concluded that Van Pay was not disabled. R. 10–28. Following the Agency's sequential evaluation process, the ALJ found that Van Pay met the insured status requirements of the Social Security Act through December 31, 2021, and that she had not engaged in substantial gainful activity since July 16, 2016, the alleged onset date. R. 15. Next, the ALJ determined that Van Pay had the following severe impairments: fibromyalgia, depression, and anxiety. R. 16. The ALJ found that Van Pay did not have an

2

impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 17.

After reviewing the record, the ALJ determined that Van Pay had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) but with the following limitations:

> no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, crouching, kneeling, and crawling; frequent bilateral handling and fingering; and no exposure to unprotected heights or unprotected moving machinery. She is limited to simple tasks requiring no more than two hours of continuous concentration; low stress job only, defined as having only occasional decision making required and occasional changes in the work setting; only occasional interaction with the public; and occasional interaction with co-workers or supervisors.

R. 19. The ALJ then found that Van Pay was unable to perform any of her past relevant work. R. 27. Considering Van Pay's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that she could perform. *Id.* As such, the ALJ concluded that Van Pay had not been under a disability from July 16, 2016, through the date of the decision. R. 28. The Appeals Council denied Van Pay's request for review of the ALJ's decision, making that decision the final decision of the Commissioner. R. 1.

## LEGAL STANDARD

The burden of proof in social security disability cases is on the claimant. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."). While a limited burden of demonstrating that other jobs exist in significant numbers in the national economy that the claimant can perform shifts to the SSA at the fifth step in the sequential process, the overall burden remains with the claimant. 20 C.F.R. § 404.1512(f). This only makes sense, given the fact that the vast majority of people under retirement age are capable of performing the essential functions required for some subset of the myriad of jobs that exist in the national

3

economy. It also makes sense because, for many physical and mental impairments, objective evidence cannot distinguish those that render a person incapable of full-time work from those that make such employment merely more difficult. Finally, placing the burden of proof on the claimant makes sense because many people may be inclined to seek the benefits that come with a finding of disability when better paying and somewhat attractive employment is not readily available.

The determination of whether a claimant has met this burden is entrusted to the Commissioner of Social Security. Judicial review of the decisions of the Commissioner, like judicial review of all administrative agencies, is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). But the "substantial evidence" test is not intended to reverse the burden of proof. In other words, a finding that the claimant is not disabled can also follow from a lack of convincing evidence.

Nor does the test require that the Commissioner cite conclusive evidence excluding any possibility that the claimant is unable to work. Such evidence, in the vast majority of cases that go to hearing, is seldom, if ever, available. Instead, the substantial evidence test is intended to ensure that the Commissioner's decision has a reasonable evidentiary basis. *Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("The substantial-evidence standard, however, asks whether the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record).").

The Supreme Court has reaffirmed that, "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

4

(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229). It means—and means only—"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

The ALJ must provide a "logical bridge" between the evidence and his or her conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). But it is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

**A. The RFC and Van Pay's Grip Strength**

Van Pay argues that the ALJ's finding that she could engage in "frequent bilateral handling," R. 19, is not supported by the substantial evidence and is further marred by the fact that the ALJ failed to explain his departure from the opinion of state agency physician Dr. Marc Young. As noted, the ALJ found that Van Pay is capable of engaging in "frequent bilateral handling and fingering," *id.*, but in Dr. Young's opinion, Van Pay should be limited to "occasional forceful manipulation in both hands." R. 161. Indeed, the ALJ acknowledged that Dr. Young held this opinion. R. 24 ("On initial application, the consultant opined that the claimant retained the capacity to perform work at a medium exertional level with occasional forceful manipulation in both hands.").

As to Dr. Young's opinion, the Court concludes that the ALJ reasonably explained his departure from it. The ALJ found Dr. Young's opinion "not persuasive" because he did not have the benefit of "reviewing the most recent medical evidence." R. 24–25. Although this led the ALJ to conclude that *additional limitations* were required for Van Pay's RFC, namely, an ability to perform only light work, as opposed to medium work, the ALJ's rejection of Dr. Young's opinion on the ground that he did not have access to the most recent medical evidence is sufficient to support the rejection of the opinion in its entirety. The ALJ needed only to "minimally articulate" his justification for rejecting the opinion of Dr. Young and he did so here. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

Substantial evidence also supports the ALJ's finding that Van Pay can engage in frequent bilateral handling and fingering. Van Pay argues that the ALJ failed to consider grip strength testing results from 2017 and 2019, and mischaracterized her grip strength as only "slightly

6

reduced." R. 25. With respect to the 2019 test results, the ALJ concluded that the findings were not persuasive because the examination was not rigorous and appeared to be based solely on Van Pay's subjective complaints. R. 25. It does appear, however, that the ALJ failed to consider the 2017 test results from an examination conducted by Dr. Brian J. Klika. R. 571. But any error committed by the ALJ in this respect was harmless because other evidence in the record supports the ALJ's ultimate conclusion regarding Van Pay's ability to engage in frequent bilateral handling and fingering. The ALJ described, and found persuasive, the opinion of Kevin Rosteing, M.D., who found that Van Pay had "slightly reduced (four out of five) grip strength bilaterally," and "normal" finger dexterity and gross manual dexterity. R. 22. The ALJ also described evidence that demonstrated Van Pay was able to "button buttons, pick up coins, tie shoe laces, separate papers, open a jar, and pick up a glass of water or a coffee cup." *Id.* Based on this evidence, the ALJ limited Van Pay to frequent bilateral handling and fingering. R. 24.

That is enough to support the ALJ's RFC assessment. Although Van Pay makes much of Dr. Klika's exam findings, Dkt. No. 27 at 3, she only points out that the results show below-average grip strength for an individual her age. Dr. Klika does not opine, nor demonstrate through any sort of exercise, that Van Pay is unable to carry out basic activities involving grip strength. R. 571. Indeed, Dr. Rosteing's opinion demonstrates the opposite—that Van Pay was able to perform a variety of basic tasks despite her reduced grip strength. R. 517. The mere fact that Dr. Klika measured reduced grip strength does not establish that it was so poor as to warrant further restrictions than those imposed by the ALJ.

As for the limitation of occasional "forceful manipulation of both hands" that Dr. Young included as part of his conclusion that Van Pay was capable of medium work, it is unclear what such a limitation would mean in light of the ALJ's determination that Van Pay was capable of only

7

light work. Not only is such a limitation vague, but as the Commissioner notes, "there is no indication that the light-work jobs of sorter, mail clerk, or even hotel housekeeper would require forceful manipulation." Br. of Comm'r at 17, Dkt. No. 26. As the Commissioner further notes, "Plaintiff concedes that the three jobs identified by the vocational expert all comported with a limitation to frequent handling, per the Dictionary of Occupational Titles," *id.* (citing Pl.'s Br. at 14, Dkt. No. 16), thus rendering any error in failing to include such a limitation harmless. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (holding that "even if the ALJ's RFC assessment were flawed, any error was harmless"). Van Pay is not entitled to remand on this claim.

### B. Van Pay's Mental RFC

Van Pay argues that the ALJ erred by failing to address the opinion of state agency psychologist Kyla Holly, Psy.D. Pl.'s Br. at 14. Specifically, she argues that the ALJ should have addressed Dr. Holly's statement that "[w]ith the existence of past panic attacks it's expected that [Van Pay] may have periodic difficulties related to maintaining a [full time] work schedule. However, these difficulties are not expected to cause limitations that would be unacceptable in a competitive work environment." R. 163. Van Pay asserts that the failure to explicitly consider this opinion requires remand.

Even if the Court were to conclude that the ALJ erred by not explicitly considering this opinion in his decision, that error would be harmless because Dr. Holly's statement is speculative and vague. First, she says that Van Pay *may* have periodic difficulties, not that she *will*. Second, Dr. Holly believes that any such difficulties would be *periodic*, but she does not explain how frequent the episodes would be. Third, she asserts that Van Pay would have *difficulties*, but that could mean just about anything. Van Pay asserts that the term "difficulties" implicates her ability to attend work on a full-time basis, such that she may miss more than one day per month, thus

8

running head-on into the VE's testimony that such attendance would be problematic. Pl.'s Br. at 15; R. 66. But having "difficulties" maintaining a full-time work schedule could mean a lapse in concentration during the day, needing to take breaks to deal with a panic attack, or a variety of other scenarios. Dr. Holly did not opine that Van Pay would miss days of work due to her panic attacks, only that she may encounter some difficulties with a full-time schedule. R. 163. Therefore, the Court can predict with "great confidence" that, on remand, the agency would reinstate its decision on this issue, even were the ALJ to explicitly consider Dr. Holly's statement. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Van Pay is not entitled to remand on this claim.

### C. Limitations on Standing and Walking

Next, Van Pay argues that the ALJ employed flawed and unsupported reasoning when he concluded that she could stand or walk within the limits of light work. Pl.'s Br. at 16. Throughout her administrative proceedings, there have been many assertions regarding Van Pay's inability to stand for prolonged periods of time. Van Pay herself indicated that she can only walk or stand for fifteen minutes at a time, R. 305; Dr. Rosteing opined that Van Pay could only stand for thirty minutes at a time and could only walk five city blocks at a time, R. 519; and an occupational therapist, Aliza Buyarski, noted that Van Pay had the ability to stand fifteen minutes at a time and could walk only two to three city blocks at a time, R. 442. Van Pay asserts that the ALJ erred in multiple respects.

First, she argues that the ALJ erred when he discredited Dr. Rosteing's opinion because Van Pay "did not need to change body positions or posture during the exam." R. 25. She contends that "the ALJ could infer nothing of Van Pay's functioning from that comment without knowing the length of the exam." Pl.'s Br. at 17. But this argument is a red herring because the ALJ, in the preceding sentence, noted that Dr. Rosteing's opinion regarding Van Pay's standing and walking

9

limitations was "inconsistent" with his objective findings that Van Pay had "normal reflexes, full strength in the arms and legs, normal muscle bulk, and normal gait." R. 25. Therefore, the ALJ articulated a more than adequate reason for rejecting Dr. Rosteing's opinion. His statement regarding Van Pay's lack of need to change posture during the exam does not undercut his reasoning or require remand.

Second, Van Pay asserts that the ALJ erred by rejecting the opinion of the occupational therapist, Aliza Buyarski. Pl.'s Br. at 18. But the ALJ gave ample reasons to reject Buyarski's opinion. Indeed, the ALJ concluded that the examination she performed was "not rigorous" and that it appeared to be based "solely on [Van Pay's] subjective complaints." R. 25. Van Pay argues that these conclusions are not supported by the record. The ALJ's statements are somewhat conclusory, but they are not without support. With respect to rigor, Buyarski's report notes that the occupational therapy evaluation was "low complexity," and that the evaluation itself lasted just 45 minutes, while 25 minutes were spent engaging in therapeutic activity. R. 445. And with respect to the ALJ's finding that the evaluation was based on Van Pay's subjective complaints, the report shows that, when Buyarski asked what Van Pay's goal was for the evaluation, Van Pay responded, "to get paperwork filled out." R. 441. This hardly suggests an examination in which Van Pay gave a full and fair effort. The ALJ did not err in rejecting Buyarski's opinion and adequately explained why he chose to do so.

Third, Van Pay asserts that the ALJ's decision to limit her to light work does nothing to address her difficulties standing and walking for long periods of time. In his decision, the ALJ wrote, "standing for long periods, and performing certain postural activities may exacerbate [Van Pay's] symptoms of her fibromyalgia. Thus, the [RFC] appropriately limits [Van Pay] to light work." R. 24. Van Pay points out that both light and medium work require the same amount of

10

standing and walking (up to six hours in an eight-hour workday), such that limiting her to light work does not address her standing limitations. *See* SSR 83-10, 1983 WL 31251, at *5–6 (Jan. 1, 1983). But the ALJ specifically rejected the medical opinions that suggested any concrete limitation on Van Pay's ability to walk or stand for significant periods of time throughout a workday. Furthermore, SSR 83-10 acknowledges that light and medium work "requires standing or walking, *off and on*, for a total of approximately 6 hours of an 8-hour workday." *Id.* (emphasis added). Van Pay does not suggest, and the evidence the ALJ found persuasive does not show, that she would be unable to alternate between standing and sitting, as light work requires. Moreover, light work also encompasses jobs that involve "sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work." *Id.* at *5. Therefore, a limitation to light work addresses Van Pay's limitations on standing and walking. She is not entitled to remand on these claims.

### D. The ALJ's Subjective Symptoms Assessment

Finally, Van Pay argues that the ALJ's subjective symptoms assessment "rests on omissions and a failure to explain how the evidence was inconsistent with" her allegations. Pl.'s Br. at 20. Van Pay asserts that, in concluding that she "retained reasonable physical function," the ALJ erred by failing to consider certain pieces of objective evidence. R. 20. She asserts that the ALJ should have considered evidence regarding her upper extremity and shoulder strength obtained by Buyarski. But as described above, the ALJ discredited Buyarski's findings on the grounds that the exam was not rigorous and relied on Van Pay's subjective complaints. Thus, the ALJ did not err by failing to consider this evidence. In any event, the ALJ's discussion of the medical evidence was exhaustive. The ALJ discussed the findings of Timothy Hazard, APNP, Kumar Akashdeep, M.D., and Kevin Rosteing, M.D. R. 20–22. There is no doubt that the ALJ

11

considered the evidence when evaluating Van Pay's subjective symptoms and the Court cannot, and will not, reweigh the medical evidence. *See Lopez*, 336 F.3d at 539.

Van Pay also takes issue with the ALJ's conclusion that she has "retained reasonable mental function despite experiencing symptoms of depression and anxiety." R. 22. Specifically, she asserts that the ALJ erred by stating, "while [Van Pay] experienced ongoing symptoms of depression and anxiety, she reported some improvement with medication and many of her complaints revolved around personal stressors (e.g., disability claim, bankruptcy, and divorce)." R. 24. She argues that the ALJ cherry-picked the record by relying on episodic instances of improvement and by concluding, on his own, that the personal stressors were the cause of her anxiety and depression. Even if the Court were to conclude that consideration of these factors was improper, which it is not, the error would be harmless. As with the evidence regarding Van Pay's physical abilities, the ALJ discussed the evidence regarding her mental abilities at considerable length. R. 22–24. The mere fact that the ALJ briefly mentioned, in a single sentence, improvement in Van Pay's condition with medication and the potential influence of personal stressors, does not render his analysis deficient or unsupported by the substantial evidence.

Van Pay argues that the ALJ erred by failing to explain how her ability to engage in daily activities was inconsistent with her allegations. The ALJ remarked that, in her function reports, Van Pay "noted difficulties with some activities of daily living, but she was still able to prepare her own meals daily, do some housework, drive a car if not feeling anxious, and leave her home alone . . . . She was able to manage personal finances and interact with others . . . . Thus, [Van Pay's] activities demonstrate that, despite experiencing her physical and mental impairments [Van Pay] remained able to engage in a number of normal day-to-day activities." R. 24. As the Commissioner points out, "the ALJ did not improperly equate these to an ability to perform full-

time work." Br. Of Comm'r at 24. Instead, it was just another in a long list of factors that the ALJ considered when evaluating Van Pay's subjective symptoms. If Van Pay believes that the ALJ should have left his discussion of her personal activities out of his decision because they were somehow irrelevant to his decision, that is not enough to constitute reversible error. *See Hall v. Saul*, No. 19-CV-1780, 2020 WL 7074474, at *5 (E.D. Wis. Dec. 3, 2020) ("But remand is not required merely because one of the many reasons the ALJ offered was of borderline relevance.").

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** at Green Bay, Wisconsin this 2nd day of September, 2022.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge